UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHILA SURESH MODI,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No.  24-cv-06833-WHO

**ORDER REMANDING ACTION FOR FURTHER PROCEEDINGS**

Plaintiff Shila Suresh Modi appeals the denial of her request for Title II benefits from the determination by the Commissioner that she was disabled only as of September 7, 2022.  Modi argues that the Administrative Law Judge improperly discounted and failed to adequately address her limitations from chronic headaches and ankle pain, failed to correctly weigh the medical evidence, failed to properly reject her subjective testimony and allow subjective testimony at her hearings, and, as a result, incorrectly determined her Residual Functioning Capacity ("RFC") for the period of her claim onset in 2015 through September 7, 2022.  For the reasons discussed below, I find that the Administrative Law Judge failed to consider evidence describing the impact of Modi's chronic headaches prior to August 2021 and failed to properly weigh medical opinion evidence.  As a result, I REMAND this action to the agency for further proceedings, including possibly obtaining Modi's testimony, which not allowed in either of the two hearings after remand.

## BACKGROUND

### I.    PROCEDURAL BACKGROUND

On October 18, 2018, Modi applied for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").  Administrative Record ("AR") 159-172.  She also filed a Title XVI application for supplemental security income on June 17, 2019.  AR 1556-1561.  In both

applications, Modi alleged disability beginning on March 1, 2015. AR 159, 1557.

The Commissioner denied Modi's applications initially and upon reconsideration. AR 118-124. Modi appealed the Commissioner's decision and appeared for a hearing before an Administrative Law Judge ("ALJ") on November 13, 2019, in Oakland, California. AR 63-89, 126-128. The ALJ issued an unfavorable decision on December 26, 2019, and the Appeals Council denied review on February 21, 2020. AR 1-4, 24, 156-58. Modi appealed the denial of benefits to this court on April 9, 2021, and the Social Security Administration stipulated to voluntarily remand the case for further de novo proceedings. AR 1361-68. Her applications were re-opened by the Hayward Social Security Administration Field Office in December 2022. AR 1562.

On remand, the ALJ held two more hearings, on December 6, 2023 and May 29, 2024. AR 1441, 1505. On July 3, 2024, the ALJ issued a partially favorable decision, finding Modi disabled as of September 7, 2022. AR 1226-1243. Modi appeals again, arguing that the ALJ erred in not finding an earlier disability onset date by improperly discounting and not appropriately addressing her chronic headaches and ankle pain. Modi Complaint, Dkt. No. 1; Plaintiff's Brief ("Pl. Br."), Dkt. No. 16 at 1.

## II.　　FACTUAL BACKGROUND

At her alleged disability onset date in 2015, Modi was 51 years old, placing her in the "closely approaching advanced age" category. AR 103. By the time of the ALJ hearing in 2019, she was 55 years old, in the "advanced age" category. AR 103. Her highest level of education is high school. AR 1654, 1783. She currently lives with in Alameda County with her husband, Suresh Modi, who is also her In-Home Supportive Services ("IHSS") caretaker. AR 201, 249.

Beginning in 2006, Modi worked as a caretaker for her mother-in-law. AR 166. In 2014, Modi's husband noticed Modi's health declining and took a leave of absence from work to help Modi look after his mother. AR 252. Modi's employment as a caretaker ended in 2015, when her mother-in-law passed away from cancer. AR 191, 1608.

### A.　　　　Modi's Testimony

At the remote hearing before the ALJ on November 13, 2019, Modi was examined by her

representative and by the ALJ with the assistance of a Gujarati interpreter. AR 63-89. Modi testified that she gets "splitting headaches" that are "so bad that basically I just feel like I want to take my eyes out of my sockets." AR 74. She told her representative that she was actively experiencing a "really severe headache" during the examination and requested "a little bit of a break" but decided not to take one. AR 75. Modi stated that her headaches give her constant pain and that she has a splitting headache "from the time [she] wake[s] up in the morning[.]" AR 76. She also testified that she "need[s] to sleep for about an hour, sometimes an hour and [a] half" for her headaches to improve and that even though she takes medication, she continues to have headaches because of her negative thoughts. AR 76-77. Modi explained that her husband takes care of all household tasks and that she would not be able to do any of the tasks without her husband. AR 80.[1]

**B.      Modi's Husband's Testimony**

In November 2018, Mr. Modi reported that Modi's ability to work was limited by her inability to concentrate and remember things, her poor memory, her severe depression, and because she was "cry[ing] all the time, . . . shouting, . . . hittin[g] on [sic] her head," and "not get[ing] along with anybody." AR 201, 207, 208. Mr. Modi reported that Modi's "shouting, crying, headache[s], [and] nightmares" affect her sleep. AR 202. Mr. Modi also wrote that she "[does not] get along with anyone" and cannot go out alone because "she has a headache all the time." AR 204, 208.

In October 2019, Mr. Modi also produced a declaration reporting that Modi receives IHSS support for "respiration assistance, bowel and bladder care, feeding, dressing, ambulation, transferring, bathing, oral hygiene, grooming, rubbing skin, repositioning, and setting up medications." AR 249. He also reported that Modi "gets stressed when people talk a lot," that when Modi "is stressed, she starts thinking negatively about herself," and that her "stress is often

---

[1] Modi appeared at remand hearing in December 2023 where she answered a few questions posed by the medical expert but did not otherwise testify. AR 1307-1311. She requested a supplemental hearing in May 2024, where she responded to questions by the medical expert and ALJ but did not have the opportunity to testify on her own behalf. AR 1255-1291.

accompanied by headaches which often last for hours." AR 249.

## III.   ALJ'S DECISION

The only ALJ decision at issue on this appeal is the partially favorable decision from July 3, 2024, finding Modi disabled as of September 7, 2022. AR 1226-1243. At Step Two, the ALJ concluded that Modi had the following severe impairments: major depressive disorder, posttraumatic stress disorder ("PTSD"), diverticulitis, and generalized anxiety disorder. AR 1229. The ALJ found that Modi also had the following non-severe impairments: migraines, hypertension, sleep apnea, bilateral ankle pain, and GERD. AR 1229. The ALJ considered these impairments non-severe "because they do not have more than a minimal impact on the claimant's ability to perform work activities." *Id*.

The ALJ also found that, beginning on September 7, 2022, the established onset date of disability, Modi "has had the following severe impairments: Major Depressive Disorder, [PTSD], Generalized Anxiety Disorder, Diverticulitis, and Plantar Fasciitis." AR 1230. The ALJ explained that plaintiff's chronic ankle pain – described as "plantar fasciitis with ankle/Achilles pain" – became "severe" as of September 7, 2022, because "surgical options" were discussed on that date and evidence showed plaintiff using a "cam walker" as of that date. AR 1230-31.

At Step Four, the ALJ found that prior to September 7, 2022, Modi had the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels" but with the following limitations:

> The claimant should avoid concentrated exposure to unprotected heights, and concentrated use of hazardous machinery. The claimant is limited to simple, routine, and repetitive tasks performed in a low stress environment which is defined as requiring occasional decision making, occasional changes in the work setting, and occasional interaction with the general public. The claimant can work in proximity to co-workers throughout the day but can only occasionally interact with her coworkers.

AR 1233. Although the ALJ found that Modi's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ concluded that "[Modi's] statements about the intensity, persistence, and limiting effects of her symptoms" are not fully supported by the medical evidence of record prior to September 7, 2022. AR 1234. The ALJ discussed evidence regarding plaintiff's mobility limitations, her abdominal and related

United States District Court
Northern District of California

conditions, and her mental health conditions, and found them consistent with or accommodated by an RFC of full work, limited to simple, routine and repetitive tasks performed in a low stress environment. AR 1233-1236. In justifying the RFC pre-September 7, 2022, the ALJ did not specifically address plaintiff's chronic headaches or her ankle/plantar fasciitis pain.

As of September 7, 2022, with the addition of the severe plantar fasciitis and related ankle pain, the ALJ determined that Modi retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations:

> [The claimant] would be able to stand and walk for 4 hours and sit for 6 hours of an eight-hour day. The claimant cannot climb ladders or scaffolds but can climb stairs occasionally. The claimant can occasionally crouch and never crawl. The claimant should avoid concentrated exposure to unprotected heights, and concentrated use of hazardous machinery. The claimant is limited to simple, routine, and repetitive tasks performed in a low stress environment which is defined as requiring occasional decision making, occasional changes in the work setting, and occasional interaction with the general public. The claimant can work in proximity to co-workers throughout the day but can only occasionally interact with her coworkers.

AR 1236. The limitation to light work with frequency limitations was due to the unsuccessful treatment of Modi's ankle pain and plantar fasciitis. AR 1237. After discussing the medical opinion evidence in the records, the ALJ reaffirmed the finding on the RFC as of September 7, 2022. In light of those additional restrictions, the ALJ found plaintiff disabled as of that date. AR 1242.

**LEGAL STANDARD**

Courts "may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "Even when the ALJ commits legal error, [courts] uphold the decision where that error is harmless," meaning that "it is inconsequential to the ultimate nondisability determination, or [that] the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation modified).

When considering whether substantial evidence supports the ALJ's decision, courts "review the administrative record in its entire[ty] . . ., weighing evidence that supports and evidence that detracts from the ALJ's determination," *Drouin v. Sullivan*, 966 F.2d 1255, 1257

United States District Court
Northern District of California

(9th Cir. 1992), and "leav[ing] it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record," *Treichler*, 775 F.3d at 1098. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Drouin*, 966 F.2d at 1257 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." *Id.* at 1258. Courts may not "affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally." *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001).

## DISCUSSION

Modi argues that the ALJ erred in four ways: (1) by finding Modi's migraines and ankle pain to be non-severe at Step Two; (2) by improperly rejecting medical opinions without providing legally sufficient reasons supported by substantial evidence; (3) by rejecting Modi's testimony and lay testimony without providing germane, specific, or clear and convincing reasons supported by substantial evidence; and (4) by improperly relying on an unsupported RFC at Step Five. Pl. Br. at 12-13.

## I.    HEADACHES AND ANKLE PAIN

At Step Two of the five-step sequential evaluation process, the Commissioner "determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (citing SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28)). Modi argues that the ALJ erred by finding Modi's headaches and ankle pain to be non-severe impairments prior to 2022 at Step Two.

Step two is "merely a threshold determination meant to screen out weak claims" and "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-147 (1987)). As long as the ALJ adequately considers both severe and non-severe

United States District Court
Northern District of California

6

impairments when determining the claimant's RFC, any errors regarding the severity determination at step two are considered harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *See* 20 C.F.R. § 416.945(a)(2) (requiring consideration of all medically determinable impairments, severe and non-severe, when assessing a claimant's RFC).

### A.   Chronic Headaches

#### 1.   Medical Evidence

Modi reported experiencing headaches for over 20 years. AR 326, 1649. In 2013, Dr. Economou prescribed Depakote for her headaches, but Modi continued experiencing headaches with flashing lights and other scotomata. AR 326-28. In 2017 and 2018, she reported a burning sensation on the top or right side of her head. AR 605, 1146. In 2018, her husband completed a Function Report stating that Modi's headaches disturbed her sleep and that she has a headache "all the time." AR 202, 204. In August 2018, a sleep specialist (Dr. Singh) reported that Modi was "[h]aving cough, headaches, runny nose with BIPAP" ((a bilevel positive airway pressure machine), and recommended adjustments to the BIPAP machine and mask. AR 738, 740. In September 2018, neurologist Dr. Economou diagnosed Modi with "Probable Migraine/Tension headaches" after Modi reported headaches for "many years" that were occurring daily and "very intense, throbbing in quality" with "frequent nausea and / [sic] vomiting," "sensitivity to light and sound," "seeing flashing lights and other several different scotomata," and frequent "pain in the back of the neck." AR 330. In 2018 and 2019, Modi was taking Topiramate for her headaches, but Dr. Economou reported that the pain and headaches were not well-controlled. AR 592 (November 2018), 748 (June 2019), 782 (October 2019).

In 2019, Dr. Singh noted that Modi's use of the BIPAP was benefitting her insomnia but felt that the pressure may need to be adjusted "due to ongoing headache." AR 756. In June 2020, Modi told her primary care provider, Dr. Hoang, that she had been experiencing daily headaches for four years that was "chronic and moderate." AR 2051, 2055. Dr. Hoang prescribed Topiramate in 2018 and Propranolol by 2020, but Modi still had "attacks" three times a week with "moderate" pain at 5/10. AR 2055 (June 2018), 2075-76 (August 2020). In June 2022, Dr. Hoang noted Modi "has not been with headaches in past few months" with increased doses of Topiramate

and Propranolol twice a day. AR 2142, 2144. By February 2023, when taking those medications, Modi had only mild headaches "sometimes." AR 2165; *see also* AR 2187 (headaches well controlled in August 2023).

In August 2019, Modi began counseling with Licensed Marriage and Family Therapist ("LMFT") Joyce DeJesus. AR 766. In addition to observing Modi's complicated medical history, DeJesus LMFT observed that Modi reported getting a "headache when talking too much." AR 766.

In October 2019, Modi's husband completed a four-page declaration of his observations of Modi's symptoms, as her daily IHSS caregiver. AR 249-53. In the declaration, he reported that having contact with or being forced to talk to people stresses Modi, which can trigger negative responses such as headaches, "shouting at [Modi's husband], crying, and, at times, . . . hitting herself on the head." AR 249-50.

### 2. ALJ Analysis

Modi contends that the ALJ's failure to consider the evidence of her chronic headaches and their impact from 2015 through 2021 – when the headaches started to be under control with topiramate and propranolol – was erroneous and prejudicial as the "ALJ may have found Modi to be disabled at an earlier date if her headache-related limitations were accounted for." Pl. Brief at 13; *see also* Reply at 1-2. The Commissioner argues that the ALJ reasonably determined that her headaches did not meet the definition of "severe" under the regulations, prior to September 7, 2022, and in any event there was no error because the ALJ's RFC determination accounted for them in his RFC. Defendant's Brief ("Def. Br."), Dkt. No. 20 at 4-9

At Step Two, the ALJ determined that the medical record did not support Modi's allegation of "constant headaches" in terms of severity or duration. AR 1229. The ALJ considered that Modi reported mild, infrequent headaches at various appointments and that she denied needing medication for her headaches. AR 1229. The ALJ also noted that "during periods in which [Modi] reported more frequent headaches, examinations and imaging of her brain was [sic] unremarkable." AR 1229. The ALJ relied on these reasons to conclude Modi's chronic headache disorder had a "minimal impact on [her] ability to conduct basic activities." AR 1229.

All of the evidence the ALJ cited, however, concerned the period *after* Modi had been prescribed larger doses of topiramate and propanol, starting in mid-2020. Modi agrees that she was "under better control and on a stable medication regimen by 2021" when she was taking topiramate and propranolol twice daily. Reply at 2; *see also* AR 1229 (ALJ relied on evidence in 36F, when plaintiff started topiramate in June 2020 and through 2023 when plaintiff's headaches were mostly controlled to 5/10 level with topiramate and propranolol).[2] She points to evidence in the record of chronic severe headaches from 2018 through early 2020 that was not discussed by the ALJ and is relevant to the severity of her chronic headaches. *See* AR 330, 1078-1189 (chronic headaches noted from August 2018 through September 2019).

It is true that even if an ALJ errs in failing to recognize an impairment as severe, the error may be harmless if adequately accounted for in the RFC. *See* Def. Br. at 5. But here, there is no discussion of the evidence of Modi's chronic headaches by the ALJ other than in the Step Two analysis, and no indication that the ALJ accommodated the chronic headaches in the RFC.[3] This was not a harmless error.[4]

I GRANT Modi's request to REMAND this action for further proceedings to address the impacts of her chronic headache condition and its severity in the period between onset in 2015 and 2021, when she admits that it was better controlled as a result of medication.

**B.    Ankle Pain**

    **1.    Medical Evidence**

Prior to filing for SSI in 2018, Modi repeatedly reported joint pain, including decreased

---

[2] The ALJ found that Modi "denied needing medication for her headaches" (AR 1229 citing 36F/178, 200) but those records from 2023 show she was taking topiramate and propranolol daily. *See* AR 2165 (36F/178), 2197 (36F/200).

[3] The testimony of Modi and her husband regarding her headaches is mentioned by the ALJ at AR 1234, but the ALJ never explains how she evaluated or why she rejected that specific testimony. *See* AR 1234-1236.

[4] The Commissioner argues that because Modi had headaches since 2013 but continued to work until 2015, the headaches were not "work preclusive." Def. Br. at 6. The ALJ never considered or endorsed this argument. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

range of motion in her left ankle, and back pain, to providers. *See* AR 298 (June 2014 complaint of joint pain, report of decreased range of motion in left ankle), 293-94 (November 2014 complaint of joint pain and back pain, report of decreased range of motion in left ankle), 432 (February 2015 complaint of joint pain and back pain, report of decreased range of motion in left ankle), 424 (July 2015 complaint of joint pain and back pain, report of decreased range of motion in left ankle), 416 (March 2016 complaint of joint pain and back pain, report of decreased range of motion in left ankle), 411 (June 2016 complaint of joint pain, report of decreased range of motion in left ankle), 397-98 (October 2016 complaint of joint pain and stiffness, report of decreased range of motion in left ankle), 391 (November 2016 report of joint pain and stiffness), 384-85 (May 5 2017 report of joint pain and back pain, report of decreased range of motion in left ankle), 363 (May 24 2017 report of joint pain and back pain), 358-59 (November 2017 report of joint pain, report of decreased range of motion in left ankle), 354 (July 2018 report of joint pain and back pain), 337-38 (October 2018 report of joint pain and back pain, report of decreased range of motion in left ankle).

In August 2021, Modi began meeting with podiatrist Dr. Van Gompel for her feet and ankles. AR 1704-06. An x-ray then revealed that Modi's left foot had anterior and posterior calcaneal spurs that had worsened since 2014. AR 1707. In August 2021, Modi reported to primary care provider Dr. Hoang that her right heel pain had existed for years. AR 2124. In October 2021, Modi presented to Dr. Van Gompel for a "new condition of right Achilles tendon pain" and reported that she was not experiencing pain in her left ankle that day. AR 1701. Dr. Van Gompel noted "tenderness to palpation along the posterior aspect of [Modi's right] heel at the insertion of the Achilles tendon to the calcaneus," and an x-ray was significant for large calcaneal exostosis with inflammation around the calcaneal tendon. AR 1702. Dr. Van Gompel diagnosed Modi with hypertension, Achilles tendinitis, plantar fascial fibromatosis, pain in left foot, and right foot calcaneal spur. AR 1702. Modi was fitted with a tall CAM walker to wear whenever weightbearing. AR 1703. In November 2021, Dr. Van Gompel noted minimal tenderness to palpation along her right heel and recommended Modi's continued use of the CAM walker. AR 1698-99. In December 2021, Dr. Van Gompel again noted minimal tenderness to palpation, noted

10

improvement, and recommended she transition to regular shoes.  AR 1694-95.

In June 2022, Modi reported continued pain in her right foot and that she had continued to use the CAM walker during periods of "excess ambulation."  AR 1689.  Dr. Van Gompel recommended a stretching exercise program and suggested that she avoid using the CAM walker due to its potential to cause knee, hip, and back pain.  AR 1691.  Dr. Van Gompel and Modi also discussed "surgical removal of calcaneal exostosis with repair of the Achilles tendinitis" at length, but Modi was not interested in surgery.  AR 1689, 1691.  In September 2022, Modi reported continued pain and was continuing to use the CAM walker during period of excess ambulation.  AR 1685.  Upon examination, Dr. Van Gompel noted large calcaneal exostosis and found tenderness to palpation along the posterior of her right heel that had only slightly improved over the course of treatment.  AR 1686.  Dr. Van Gompel provided Modi and her husband with a handout explaining the correct stretching program and discussed the option of surgery, but Modi again expressed disinterest in a surgical procedure.  AR 1687.

### 2.    ALJ Analysis

The ALJ acknowledged that "over the years," the record demonstrates "oscillation with regards to claimant's ankle dysfunction with isolated instances of decreased range of motion exhibited," but outside of those "acute episodes" the record otherwise "demonstrates normality with respect to her left ankle, including her gait."  AR 1230.  Because the record was "consistent with a condition that waxes and wanes in intensity" and, prior to September 7, 2022, Modi "was treating this condition conservatively," the ALJ concluded that Modi's ankle pain was non-severe.  AR 1230.  The ALJ acknowledged that "imaging dated from December 2021 demonstrates large calcaneal exostosis with inflammation around the Achilles tendon" but at the same time, cited "evidence prior to September 7, 2022 indicates improvement in this condition."  *Id.*  In light of the conservative treatment and oscillation, the ALJ determined the conditions became severe as of September 7, 2022, because that was when surgery for the right ankle was discussed and Modi wore the cam walker boot continually thereafter.  AR 1231.

Modi complains that the ALJ ignored evidence of the severity of her left ankle pain in light of reports from 2014 through 2018 showing decreased range of motion in her ankle and the

11

evidence of "calcaneal spurs" in her left ankle in July and August 2021 that caused pain and then the new complaint of right ankle pain in October 2021. *See* Pl. Brief at 14. But unlike with the chronic headaches, the ALJ considered the evidence identified by Modi and found that it supported his view that until September 2022, Modi had largely conservative treatment and her ankle/foot conditions oscillated.[5] And also unlike with Modi's chronic headaches, the ALJ addressed the evidence regarding ankle pain/plantar when determining the post-September 7, 2022, RFC. AR 1236-1237. Therefore, even if it was an error not to consider Modi's ankle pain severe, that failure was at most harmless error.[6]

## II.    MODI'S INABILITY TO TESTIFY

Modi also argues that she was prevented from testifying at both of the remand hearings. She argues, as a result, that she was denied due process and prevented from giving competent lay evidence that the ALJ would have had to consider regarding her physical conditions and her limited daily life activities. Pl. Br. at 20-23; Reply at 6 (citing HALLEX I-3-3-2(A)[7] & 20 C.F.R.

---

[5] The ALJ also considered the unsuccessful treatments of changing her shoes, orthotics, soaking her foot, icing, ultrasound therapy, and special stretches. AR 1236 (citing AR 1691, 2134).

[6] Modi argues that the testifying medical expert, Dr. Washburn, was "equivocal" when he put the onset of "severe" Achilles tendonitis in September 2022, and noted that he relied on part on the diagnosis of that condition as of September 2022. She points out that the Achilles tendonitis was first diagnosed in October 2021. *See* Reply at 2; AR 1260-61 (hearing transcript). There is no evidence of the severity of the tendonitis at that time, when Modi was pursuing conservative treatment. The ALJ relied not only on Washburn's testimony but also, as noted, on the discussion of surgical intervention as of September 2022 and evidence that Modi was using a cam walker continually after that date.

[7] Program Operations Manual System (POMS) HA 01330.002 "Abuse of Discretion" (Renumbered from HALLEX section I-3-3-2) provides

   The Appeals Council (AC) will assume jurisdiction to review a case when there appears to be an abuse of discretion by the administrative law judge (ALJ). An abuse of discretion is present where an ALJ's action is erroneous and without any rational basis, or is clearly not justified under the particular circumstances of the case. This includes situations where an ALJ improperly exercises, or fails to exercise, his or her administrative authority. [] An abuse of discretion may also occur when an ALJ does not follow procedures required by law or agency policy.

   Examples of abuses of discretion include, but are not limited to, the following:

   • Not permitting a claimant to submit evidence necessary to support his/her claim;
   • Not postponing a scheduled hearing despite physician documentation of the claimant's unavailability for health reasons; and
   • Not conducting a full and fair hearing, such as refusing to allow the claimant to

§ 416.1450(a)).[8]

At the remand hearing in December 2023, Modi did not have the opportunity to provide her own testimony. She was asked a couple of questions by medical expert Dr. Linda Miller during the ALJ's examination of Dr. Miller. AR 1307-1311. The ALJ did not ask Modi any questions. *See* AR 1325 (noting the proceeding had run out of time and requesting further hearing so plaintiff could testify). At the supplemental remand hearing in May 2024, despite her request to testify, the ALJ did not give Modi an opportunity to testify. The ALJ cited constraints in the hearing time and the ALJ's need to hear from the vocational expert. AR 1283-84 (ALJ forgoing plaintiff testimony because of need to hear from the vocational expert, ALJ offers to "listen to past testimony because she's had multiple hearings at this point, right?"); 1290 (May 2024 hearing, Modi's attorney requested another supplemental hearing if the ALJ is "unable to find a fully favorable decision without [Modi's] testimony, I would ask that we have another hearing.").

Defendant admits that Modi was not allowed to testify in the 2023 and 2024 hearings, but points out that she did testify in her original 2019 hearing and responded to questions from the medical expert and ALJ in the 2023 and 2024 hearings. The Commissioner argues that because Modi was able to submit documentary evidence and statements to the ALJ, and her counsel was able to submit briefs through 2023, she was provided an adequate opportunity to be heard and there was no denial of due process. Def. Br. at 10-11. The Commissioner also points out that the remand order that led to the subsequent hearings did not "require" a remand hearing at all, although it gave the ALJ discretion to hold them. *See* AR 1365-66. The parties also dispute whether Modi is sufficiently fluent in English such that there were technical difficulties with an interpreter at the 2024 hearing. Def. Br. at 11; Pl. Br. at 6.

testify or cross-examine witnesses

[8] 20 C.R.F. § 416.1450. "Presenting evidence at a hearing before an administrative law judge. (a) The right to appear and present evidence. Any party to a hearing has a right to appear before the administrative law judge, either by video teleconferencing, in person, or, when the conditions in § 416.1436(c)(2) exist, by telephone, to present evidence and to state his or her position. A party may also make his or her appearance by means of a designated representative, who may make the appearance by video teleconferencing, in person, or, when the conditions in § 416.1436(c)(2) exist, by telephone."

I find the failure to allow Modi to testify troubling, to say the least. As noted above, the ALJ failed at least to consider the impact of Modi's chronic headaches prior to 2021. Direct testimony from Modi was likely relevant to her ability to handle daily life activities in light of her many severe and non-severe conditions. Absent persuasive case law addressing this issue – which neither side cites – I will not decide whether the denial of plaintiff's requests to testify in 2023 and 2024 violated Modi's rights to due process. Because I find that the ALJ committed clear error in failing to address the evidence regarding Modi's chronic headaches from 2015 through at least 2021, I am ordering that this case be remanded for further administrative proceedings. Whether the ALJ violated the POMS/HALLEX rules and what further proceedings may be required should be determined by the Appeals Council on remand.

## III.    REJECTION OF MEDICAL OPINIONS

Modi also argues that the ALJ committed further error by improperly rejecting medical opinion evidence without legally sufficient reasons or by failing to consider the consistency and supportability of those medical opinions. Reply 3-5. She claims that the ALJ rejected a number of different treating and consulting provider opinions,[9] but focuses on two: Dr. Armeen Weber, who was Modi's treating psychiatrist from 2017, and Dr. Jacklyn Chandler, a SSA consultant. Reply at 3-5.

### A.    Dr. Weber

Dr. Weber, Modi's treating psychiatrist since 2017, twice explained in her treatment notes that Modi was unable to work. In June 2019, Dr. Weber believed that Modi was not able to independently perform daily life activities given her mental health conditions (bi-polar disorder, major depressive disorder and PTSD) and recommended that she receive IHSS care. AR 743.[10] In February 2020, after having seen her for more than three years and making continual adjustment of psychiatric medicines, Dr. Weber wrote in her notes that Modi could not work as a result of her inability to concentrate, her anxiousness, and her inability to follow instructions. Dr. Weber

---

[9] See Pl. Br. 14-20.

[10] In-Home Supportive Services (IHSS) is a California program providing in-home care through California's Department of Social Services.

14

concluded that Modi would miss over 5 days a month of work due to her anxiety and lack of sleep. AR 1673, 1714.

The ALJ discounted these opinions because they lacked "diagnostic support," were inconsistent "with the record," were "unquantified" and not based on "objective testing or laboratory reports." AR 1237. The ALJ does not identify what objective testimony or laboratory reports would support Modi's documented psychiatric conditions. As the Ninth Circuit has noted, "psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

The ALJ did not address the levels of psychiatric medicines prescribed by Dr. Weber or the changes Dr. Weber made every few months in an effort to control Modi's symptoms from her bi-polar disorder, major depressive disorder and PTSD, and the monthly complaints Modi expressed showing limitations on her daily life activities. The only alleged inconsistencies identified by the ALJ were "normal" results on mental status examinations by Dr. Weber and others at the time of her visits. *See* AR 1237 (citing AR 438-39, 443-444, 472-73). But even in those records, while Modi was noted as having thought process/content, orientation, attention and concentration within normal limits during her doctor's visits, Dr. Weber noted evidence of poor symptom control and that Modi's mood/affect and insight were poor or impacted.

The ALJ's other ground for discounting Dr. Weber is that Dr. Weber's request for IHSS support for Modi might have been based on in part on Modi's physical conditions and in the end excluded help performing "domestic related services." *Id.* The IHSS report identified by the ALJ (34F/84-85; AR 1878-1883), however, actually increased overall services for Modi and recognized the assistance her spouse provided. *See, e.g.*, AR 1833. I agree with Modi that the ALJ did not properly address the consistency and supportability of Dr. Weber's opinions.

### B.    Dr. Chandler

Dr. Chandler found in 2023 after a consultative exam that Modi would have marked difficulty functioning under normal stress in a work setting. The ALJ discounted that finding as "unsupported by her own findings" and inconsistent with the record, which did not include

15

documented instances where Modi became overwhelmed by normal everyday occurrences. The ALJ also discounted Chandler's identification of Modi having marked difficulty in related and interacting with supervisors, co-workers and the public as unsupported, given Modi's presentation in the consultative exam and the many mental status examinations where Modi was described as cooperative and pleasant. AR 1239.

Modi objects to the ALJ's analysis. The ALJ identified no true inconsistencies. The ALJ did not identify anything in the record outside Dr. Chandler's report, such as evidence regarding Modi's daily life activities, that was inconsistent with Dr. Chandler's findings. Dr. Chandler expressly recognized that Modi's psychiatric conditions were only partially managed by her medications, that her "decreased attention and concentration and slow pace" appeared to be due to "her psychiatric symptoms," and that while Modi only had "moderate" difficulty interacting with Dr. Chandler, she would likely have marked difficulty in the less structured environment of work. AR 1785-86. Far from being inconsistent, Dr. Chandler's limitations are consistent with her descriptive findings and explanations and, likewise, consistent with many of Dr. Weber's opinions regarding Modi's limitations.

The ALJ's weighing of the medical evidence is not supported by substantial evidence and did not appropriately consider the consistency and supportability of Dr. Weber's and Dr. Chandler's opinions.[11]

## IV.   REMEDY

While Modi asks for remand for entry of benefits, I REMAND for further proceedings. Because the ALJ erred in failing to treat as severe and address the impacts of Modi's chronic headaches prior to August 2021 and failed to appropriately address the medical evidence from at least Dr. Weber and Dr. Chandler, the record is not developed sufficiently to determine that Modi is entitled to benefits for the period prior to September 7, 2022. *See Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (reviewing court may "reverse and remand a determination by the

---

[11] Modi argues in her opening brief that the ALJ committed additional errors in weighing other medical opinion evidence. In Reply, plaintiff focuses only on Drs. Weber and Chandler. I focus on the same. On remand, the Appeals Council may direct the ALJ to consider or reconsider additional medical opinions.

Commissioner with instructions to calculate and award benefits" only when it is "clear from the record that a claimant is entitled to benefits."). Remand will also allow the Appeals Council, and perhaps the ALJ at any further hearing, to consider whether additional testimony from Modi is required by due process or otherwise necessary to develop a complete record.

**IT IS SO ORDERED.**

Dated: March 30, 2026

William H. Orrick
United States District Judge

United States District Court
Northern District of California

17